UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD C. HURSTON,<br><br>Plaintiff<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:14-cv-8181-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## BACKGROUND

### I.   Procedural History

Plaintiff Donald Hurston filed applications seeking disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on December 18, 2011 and January 19, 2012 for a disability he claimed began on December 14, 2011. [Admin Record ("AR") 115, 119.] Specifically, Hurston said he was disabled because of a skin disorder and osteonecrosis. [AR 140.]

The Social Security Administration denied the application on April 10, 2012 [AR 101-104], and Hurston requested a hearing before an administrative law judge

1   ("ALJ") [AR 105]. An ALJ held a hearing on June 19, 2013, at which Hurston was
2   unrepresented. [AR 44-82].[1]

3   On July 3, 2013, the ALJ issued a written opinion finding Hurston not to be
4   disabled. [AR 12-24.] The Appeals Council denied review, and Hurston appealed
5   to this Court. [*See* AR 3-8.]

6   **II.   The ALJ's Opinion**

7   After a hearing, the ALJ applied the sequential evaluation process to find
8   Plaintiff not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).[2] At
9   step one, the ALJ concluded that "[t]he claimant has not engaged in substantial
10  gainful activity since December 14, 2011, the alleged onset date." [AR 17.] At step
11  two, the ALJ found that Hurston suffered from the severe impairment of right hip
12  osteonecrosis, that he was obese, and that he suffered from a non-severe impairment
13  based on a bullet wound to the neck. [AR 17-18.] In addition, the ALJ concluded
14  that Hurston's "medically determinable mental impairment of depression … does
15  not cause more than minimal limitation in the claimant's ability to perform basic
16  mental work activities and is therefore non-severe." [AR 18.] At step three, the
17  ALJ found that Hurston did not "have an impairment or combination of impairments

---

[1] Hurston filed a waiver of representation. [AR 114.]

[2] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" [AR 19.]

At step four, the ALJ determined that Hurston had a "residual functional capacity to perform light work" with certain exertional and non-exertional limitations. [AR 19-20.] Based on this RFC, the ALJ found that Hurston was not disabled because he was "capable of performing past relevant work as a collections clerk, … telemarketer, … and transfer clerk." [AR 23.] The ALJ never reached step five.

## GOVERNING STANDARDS

### I. General Standard

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### II. Standard for ALJ Credibility Determinations

As a preliminary matter, the Commissioner contests the appropriate standard of reviewing an ALJ's credibility determination. [*See* Dkt. 24 ("Def.'s Br.") at 4 n.2.] Specifically, the Commissioner argues that the "clear and convincing reasons" standard that the Ninth Circuit has recently reaffirmed in *Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. 2014) and *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) "is contrary to 42 U.S.C. § 405(g) and does not give proper deference to the standard specified by the agency in SSR 96-7P." [Def.'s Br. at 4 n.2.] That argument was foreclosed again this month in *Brown-Hunter v. Colvin*, No. 13-15213, -- F.3d --, 2015 WL 4620123 at *5 (9th Cir. Aug. 4, 2015). Accordingly,

3

"[w]here, as here, an ALJ concludes that a claimant is not malingering, and that [he] has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

## DISCUSSION

### I. The ALJ's Opinion Includes Specific Reasons for Finding Hurston Not to Be Credible.

Hurston's first challenge is that the ALJ did not provide specific reasons for rejecting Hurston's testimony about his symptoms. "[T]o ensure our appellate review is meaningful, … we require the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari,* 246 F.3d 1195, 1208

4

(9th Cir. 2001)). Accordingly, "[g]eneral findings are insufficient." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). And as the Ninth Circuit held in *Treichler*, "boilerplate statement[s]" and "introductory remark[s]," *without more*, "fall short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based." *Id.* at 1103.[3]

Here, Hurston claims that the ALJ violated his duty to provide specific reasons because the ALJ, according to Hurston, gave only the following boilerplate:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[Dkt. 23 ("Pl's. Br.") at 7 (quoting AR 22).] And this Court would agree, if that were the only thing the ALJ said about Hurston's credibility. But the ALJ said far more.[4] First, he contrasted Hurston's description of his daily activities with his complaints of disabling symptoms. [AR 22.] That contrast included evidence that claimant looked for work and performed odd jobs—facts that demonstrated that the "claimant's daily activities have, at least as times, been somewhat greater than the claimant has generally reported." [*Id.*] Second, the ALJ relied on a "face-to-face

---

[3] Relevant here, the Ninth Circuit explained in *Treichler* that "after making [a certain boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why." *Treichler*, 775 F.3d at 1103. Thus, it is fair to say that there is no black letter rule against using boilerplate introductory statements.

[4] Whether the ALJ stated his bases for his credibility determination is a question different from whether the ALJ's reliance on those bases was appropriate. The latter is addressed *infra* at Part II.

5

interview with the claimant [that] was conducted by the Social Security Administration on September 19, 2012." [AR 23.] Third, the ALJ explained that "[t]he claimant's statements and those of third parties concerning the claimant's impairments and their impact on the claimant's ability to work are not credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." [*Id.*]

Hurston's own brief further undercuts his position. After claiming that the opinion does not present specific reasons for discounting his testimony, Hurston attacks the ALJ's reasons for finding him not to be credible. [*See, e.g.*, Pl's. Br. at 8 ("It also appears that the ALJ simply rejects Mr. Hurston's testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence."); *id.* at 9 ("The other rationale articulated by the ALJ is that Mr. Hurston's daily activities somehow can be construed as comparable to a 40 hour work week."); *id.* at 10 ("The ALJ states that because Mr. Hurston can groom himself, feed himself, and perform other sporadic activities of daily living he is not credible in alleging a disability."); *id.* at 11 ("The ALJ's other observation at regarding Mr. Hurston's appearance before a Social Security Administration claims representative is also not a legally sufficient rationale."). Hurston cannot seriously claim that the ALJ provided no specific reasons while he simultaneously identifies at least three bases for the ALJ's credibility determination.

This case is easily distinguishable from *Treichler*[5] and *Vasquez v. Astrue*, 572 F.3d 586, 591-92 (9th Cir. 2009)[6]– two cases where the Ninth Circuit found an

---

[5] The ALJ opinion found insufficient stated: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

6

ALJ's boilerplate to be insufficient. In each of those cases, the ALJ opinion did not present a further explanation of the facts showing why the ALJ believed the claimant not to be credible. As explained above, the ALJ here did far more.

**II. The ALJ's Opinion Provides At Least One Clear and Convincing Reason for the Credibility Determination.**

The next question is whether the ALJ properly found Hurston not to be entirely credible. Because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" [AR 22], the ALJ's reasons must be clear and convincing. *Brown-Hunter*, 2015 WL 4620123, at *5. Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate

---

[6] The ALJ opinion found insufficient stated:

> [A]fter carefully considering all of the medical and documentary evidence, the undersigned finds that, in light of discrepancies between the claimant's assertions and information contained in the reports of the treating and examining physicians, the allegations by the claimant as to the intensity, persistence, and limiting effects of his [sic] symptoms were not well supported by the probative evidence and are not wholly credible. The claimant's complaints regarding the frequency, severity and duration of her back pain and lower extremity pain are not consistent with the objective medical evidence and are generally consistent [sic] with the limitations found.

7

conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

Here, the ALJ gave four reasons to reject Hurston's credibility: (1) Hurston's encounter with a Social Security claims representative showed that he could perform certain mental and physical activities without difficulty; (2) Hurston's performance of his other daily activities; (3) that Hurston continued to look for work and perform odd jobs; and (4) the conflict between his statements and the reports of the treating and examining practitioners. [AR 22-23.] The Court takes each in turn.

### A. The ALJ Could Not Solely Rely on Hurston's Interactions with the Social Security Claims Representative to Determine His Credibility.

One basis for the ALJ's credibility finding was that during "a face-to-face interview with the claimant [that] was conducted by the Social Security Administration on September 19, 2012," "the interviewer did not observe or perceive the claimant having any difficulty hearing, reading, breathing, understanding, being coherent, concentrating, talking, answering, sitting, standing, walking, seeing, using hand(s), or writing." [AR 23 (relying on Field Office Disability Report ("Field Report") (AR 136-37).] This conclusion was improper.

It is well established that an ALJ may not rely solely on his personal observations of a claimant's behavior to determine a claimant's testimony is not credible. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). The underlying rationale is that a claimant's "demeanor at the hearing provides little, if any, support for the ALJ's decision to discredit the testimony." "Although an ALJ's personal observations, standing alone, cannot support a determination that a claimant is not credible, they may form part of that determination." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (citing *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) ("That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain.")).

The Social Security Administration has codified the same principle in its own rules, giving the following guidance:

> In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements.
>
> In evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who previously interviewed the individual, whether in person or by telephone.

SSR 96-7P, 1996 WL 374186, at *8 (S.S.A. July 2, 1996).[7]

Though the Field Report may support rejecting credibility, it is not itself a convincing reason to find Hurston not to be credible. Relying on the Field Report is not sufficiently distinct from engaging in a prohibited "sit-and-squirm" credibility determination. If anything, this evidence is even more tenuous. The Field Report contains no concrete observations that the ALJ can incorporate into his analysis, and provides no foundation to test the veracity of the alleged observations. Rather, the SSA employee merely selected "No" in response to questions on whether the employee observed the claimant having difficulty with various activity categories. [AR 137.] In fact, the form invites an employee to "[e]xplain 'No' answers that [he] think[s] would assist the DDS in making a decision." [*Id.*] The failure to include

---

[7] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari,* 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

any explanation tacitly acknowledges that the employee **did not** think any of his answers would assist the DDS in making a decision. Accordingly, the Field Report does not itself present a clear and convincing reason for rejecting Hurston's credibility.

## B. Hurston's Performance of Daily Activities Was a Clear and Convincing Reason to Discredit His Subjective Complaints.

As a general proposition, it is unquestionable that an ALJ may rely on "testimony about the claimant's daily activities" to "discredit an allegation of pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The underlying theory is that if "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Id.*

That said, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits[.]" *Id.* Accordingly, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). That is because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ provided a battery of daily activities that Hurston performs, including taking care of his personal needs and grooming, preparing meals, using

public transportation, shopping, managing his own finances, and attending community centers and schools. [AR 22.] The ALJ also notes that Hurston "can drive"—which is an activity that "inherently involves constant and complex coordination." [*Id.*] These findings by the ALJ are *mostly* supported by the record, although Hurston's testimony at the hearing seemed to equivocate on some of these points. Hurston reaffirmed that he was "able to dress and bathe himself," had "[n]o problems" "preparing meals," "pick up after [him]self," could make small talk, and was "trying to clean up, and . . . organize … [his] new place[.]" [AR 61-65.] However, as for driving, Hurston said that he did not drive, and was not sure if he could. [AR 61-62.]

Nonetheless, on the whole, substantial evidence exists in the record supporting the ALJ's clear and convincing reason for disbelieving Hurston's testimony—Hurston's performance of daily activities in a manner that conflicts with his claims of disability. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (("It is true that [the claimant's] testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."). Even though his daily activities are somewhat impeded, the record reflects that Hurston retained substantial functionality that the ALJ could reasonably conclude contradicted Hurston's claims of disabling hip injury.

Although the Court has already determined that the ALJ had one clear and convincing reason to reject Hurston's testimony, which is all that is necessary to affirm the ALJ's decision, it nevertheless addresses the other issues raised in Hurston's briefing below.

### C. Hurston's Performance of Odd Jobs and Jobseeking Was Not a Clear and Convincing Reason to Disbelieve Hurston's Testimony.

Another basis for the ALJ's determination that Hurston was not credible was his performance of "odd jobs such as cleaning" and the "evidence that the claimant looked for work, … which is an activity that is wholly inconsistent with alleging disability." [AR 22.] As to the odd jobs, the ALJ noted:

> [A]lthough that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. I note that performing odd jobs can involve considerable physical and mental activity.

[*Id.*] The ALJ was correct to note that performing odd jobs can be physically and mentally taxing. However, in Hurston's case, the record reflects that such activity *might* be too much for him. Hurston said that he was "in too much pain even to accomplish little task[s] such as walking up and down stairs, or just getting around for more than a few hours." [AR 162.] Unlike the other daily activities, the ALJ's reliance on the performance of odd jobs is not itself a clear and convincing reason to disbelieve Hurston's testimony, although it does support the ALJ's conclusion that Hurston is not disabled.

### D. The ALJ Inadequately Explained How Hurston's Statements Conflicted With the Documentary Reports and Practitioner Reports.

The last reason posited for finding Hurston not to be credible is that, according to Hurston, the ALJ rejected his testimony because it "lack[ed] support in the objective medical evidence." [Pl.'s Br. at 8.] If this were the case, and if it were the only rationale given, Hurston would be correct that a lack of objective support is insufficient to cause an ALJ to discredit a claimant's testimony.

However, the ALJ's basis for discrediting Hurston's testimony was not that it was "not substantiated affirmatively by objective medical evidence" *Robbins v.*

*Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006), but rather because of "discrepancies between [Hurston's] assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." [AR 23.] The problem with the ALJ's opinion is not that he did not proffer a potentially valid reason, but rather that he did not explain what discrepancies existed, and how they rendered Hurston not credible (as opposed to merely in disagreement with his doctors). Accordingly, the ALJ has not *clearly* explained how the documents undermine Hurston's truthfulness. So this reason too is inadequate to solely support a credibility determination.

## CONCLUSION

To uphold the ALJ's credibility determination, the Court need only conclude that the ALJ had one clear and convincing reason supported by substantial evidence in the record. *See Carmickle*, 533 F.3d at 1162-63 (finding an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if the ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record" (citing *Batson,* 359 F.3d at 1197)). The Court finds that the ALJ's reliance on the contrast between Hurston's daily activities and the extent of his impairments was one such reason.

For all of the foregoing reasons, **IT IS ORDERED** that judgment be entered AFFIRMING the decision of the Commissioner of Social Security and DISMISSING this action with prejudice.

**IT IS HEREBY ORDERED.**

DATED: August 13, 2015      _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE